FARMERS STATE BANK OF CROSBY,
a State Banking Association,
Petitioner,

v.

The BOARD OF GOVERNORS OF the
FEDERAL RESERVE SYSTEM,
Respondent.

No. 77–1039.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 11, 1977.

Decided Nov. 30, 1977.

Frank F. Jestrab, Williston, N. D., for petitioner.

Ronald R. Glancz, Atty., Dept. of Justice, Civ. Div., Appellate Sec., Washington, D. C., for respondent; John D. Hawke, Jr., Gen. Counsel, Richard M. Ashton, Atty., Board of Governors of the Federal System, Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., on brief.

James B. Loken, Minneapolis, Minn., for intervenor-respondent.

Before GIBSON, Chief Judge, BRIGHT, Circuit Judge, and TALBOT SMITH, Senior District Judge.*

PER CURIAM.

Petitioner Farmers State Bank of Crosby, North Dakota (Farmers Bank), challenges an order of the Board of Governors of the Federal Reserve System (the Board) granting Dakota Bancorporation (DBC) permission to acquire a proposed national bank at Crosby. We affirm the Board's order.

DBC, a bank holding company in South Dakota, contemplates the following series of transactions. A group of investors, including the president of DBC, has received permission from the Comptroller of the Currency to organize a new bank, to be called First National Bank of Crosby (Crosby bank), subject to the condition that DBC would acquire and hold eighty percent of the stock of the bank. After Crosby bank is organized and DBC obtains control, Crosby bank will purchase the assets and assume the liabilities of Columbus National Bank, Columbus, North Dakota (Columbus bank), the only bank currently owned by DBC. DBC will then liquidate Columbus bank, although the Columbus facilities will serve as paying and receiving stations for Crosby bank. Upon completion of these transactions, DBC will continue to control only one bank, but the bank will be located in Crosby, North Dakota, rather than Columbus, North Dakota.

On July 22, 1976, DBC applied for Board approval of the acquisition of the proposed Crosby bank as required by section 3(a)(3) of the Bank Holding Company Act of 1956, 12 U.S.C. § 1842(a)(3) (1970). Farmers Bank, also of Crosby, North Dakota, and therefore a potential competitor of Crosby bank, filed a protest to the proposed acquisition, alleging that an offering circular issued by DBC in 1973, in connection with the sale of its common stock, contained false and misleading statements in violation of federal and state securities laws and that the proper notice and hearing on the proposed merger had not been provided. The Board rejected these allegations and, based on its own investigation and analysis of the DBC proposal, issued an order approving the application. Farmers Bank subsequently filed the present petition for review of the Board's decision, raising the same issues that it raised before the Board.

Farmers Bank first challenges the order on the ground that DBC allegedly violated federal and state securities laws and that the Board should have considered these violations before approving the acquisition. On April 6, 1973, prior to offering its common stock to the public, DBC filed an offering circular with the North Dakota Securities Commissioner. The circular contained the statement that the company would use the proceeds of the offering "to purchase controlling interests in additional banks or for general corporate purposes." Farmers Bank contends that the phrase "additional banks" implies an intention to acquire existing banks, as opposed to newly organized banks, and that the circular was therefore misleading, in violation of section 17(a) of the Securities Act of 1933,[1] section 10(b) of the Securities Exchange Act of 1934,[2] and section 10–04–15 of the North Dakota Century Code (1976).

We must reject this contention for it rests on pure speculation. Farmers Bank has provided no evidence that any investor has been misled or has claimed to have been misled by the language in question. Moreover, DBC explicitly disclosed the full de-

---

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. 15 U.S.C. § 77q(a) (1970).

2. 15 U.S.C. § 78j(b) (1970).

tails of the proposed transaction in an amended offering circular filed in April 1974 and a supplement to the offering circular filed in August 1974. The allegation of nondisclosure and misstatement lacks any factual foundation.

 The second challenge to the Board's order is that "[n]o hearing on the proposed merger has been noticed or held. 12 C.F.R. Part 5." This contention is without merit. The Board has neither the authority nor the duty to approve the proposed merger.[3] Because the acquiring bank is to be a national bank, that authority lies exclusively with the Comptroller of the Currency, 12 U.S.C. § 1828(c)(2)(A) (1970); 12 C.F.R. § 5.1 (1976), and the Comptroller cannot consider the merger until the Board has approved the first step of this multistage transaction. The record shows that DBC has fully apprised both the Board and the Comptroller of its plans and that the procedures followed to date have been proper.

We find no merit in petitioner's challenge to the Board's order and, accordingly, we affirm that order.

Bruce D. White, St. Louis, Mo., on brief for appellant.

Daniel E. Wherry, U. S. Atty., Omaha, Neb. and Richard J. Nolan, Asst. U. S. Atty., Lincoln, Neb., for appellee.

Before HEANEY, STEPHENSON and HENLEY, Circuit Judges.

---

3. The Board would have the authority and duty to approve the merger if the acquiring bank were to be a "State member bank," 12 U.S.C. § 1828(c)(2)(B) (1970), or if DBC itself, rather than a subsidiary bank, were the acquiring entity, 12 U.S.C. § 1842(a)(4) (1970). Crosby bank's acquisition of Columbus bank does not come within these categories.